UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                      Case No. 21-10156-BPC
                                                           Chapter 13
GREGORY MAYO,

    Debtor.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the objection (Doc. 20) of TitleMax of Alabama, Inc. ("TitleMax") to the confirmation of Debtor's proposed Chapter 13 plan and a motion (Doc. 21) by TitleMax seeking confirmation that the automatic stay is not in place as to 2011 Hyundai Sonata (the "Automobile"). For the reasons set forth herein, the Court finds that TitleMax's objection to confirmation (Doc. 20) is sustained, and TitleMax's motion (Doc. 21) seeking confirmation that the automatic stay is not in place is due to be granted.

**I.     JURISDICTION**

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b). These are core proceedings within the meaning of 28 U.S.C. §§ 157(b)(2)(G) and (L).

**II.    FACTS**

Debtor entered into a pawn contract with TitleMax whereby Debtor pledged the title to the Automobile as collateral in exchange for a loan. (Doc. 42). Pursuant to the pawn contract, Debtor was required to repay the borrowed amount of $4,611.50, plus a pawn charge of $506.80, on or before the maturity date of December 2, 2018 (the "Maturity Date"). *Id.* Debtor

1

failed to repay the loan by the Maturity Date and failed to redeem the Automobile within the thirty-day redemption period. *Id.*

On January 8, 2019, Debtor filed a Chapter 13 petition with this Court (Case No. 19-10029, the "2019 Case"). *Id.* In the 2019 Case, Debtor listed the Automobile in Schedule A/B with a value of $7,000 and listed TitleMax as a secured creditor in Schedule D. *Id.* Debtor proposed to pay TitleMax through his Chapter 13 plan as a secured creditor. *Id.* TitleMax filed a secured proof of claim for $5,625.10 and did not object to confirmation of the plan. *Id.* Debtor's plan was confirmed, and TitleMax was paid $1,154.15 through the plan. (Doc. 44). The 2019 Case was dismissed on January 23, 2020. *Id.*

On February 11, 2020, Debtor filed a second Chapter 13 petition with this Court (Case No. 20-10208, the "2020 Case"). *Id.* In the 2020 Case, Debtor listed the Automobile in Schedule A/B noting it was "Subject to Title Pawn". *Id.* Additionally, Debtor listed TitleMax as an unsecured creditor in Schedule E/F with a disputed claim in the amount of $1.00. (Doc. 42). Debtor's proposed plan in the 2020 Case, as amended, did not include provisions related to TitleMax or the Automobile. *Id.* Absent any objection from TitleMax, the amended plan was confirmed. The 2020 Case was later dismissed on January 28, 2021. *Id.*

On February 11, 2021, Debtor filed the instant Chapter 13 case with this Court (the "2021 Case"). *Id.* In this case, Debtor listed the Automobile in Schedule A/B noting it was subject to a lien by TitleMax. *Id.* Additionally, Debtor listed TitleMax as a secured creditor in Schedule D, but noted that the claim is "disputed." *Id.* Similar to the 2019 Case, Debtor again proposes to pay TitleMax through the proposed Chapter 13 plan as a secured creditor. (Doc. 44). Yet instead of filing a secured claim as it did in the 2019 Case, TitleMax repossessed the Automobile on March 4, 2021. TitleMax now objects to confirmation of

2

Debtor's proposed plan and requests the Court to enter an order confirming that the Automobile was not subject to the automatic stay under 11 U.S.C. § 362. (Doc. 42).

In support of its position, TitleMax contends that the pawn agreement matured on December 2, 2018 and under Alabama law, Debtor had an additional thirty days from the Maturity Date to redeem the Automobile. *Id.*; ALA. CODE § 5-19A-6 (1975). As a result of Debtor's failure to redeem within the statutory time period, TitleMax contends the Automobile was forfeited to TitleMax on January 2, 2019. (Doc. 42). Thus, when the 2021 Case was filed, Debtor's right of redemption had expired, Debtor had no interest in the Automobile, and the Automobile did not enter Debtor's bankruptcy estate. *Id.*

The parties do not dispute that as of the initial 2019 petition date, the redemption period under the Pawn Agreement expired, and thus, under the Alabama Pawnshop Act, "absolute right, title, and interest in" the Automobile automatically transferred to TitleMax. (Doc. 44); ALA. CODE § 5-19A-6 (1975) ("[p]ledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker."). Rather, Debtor contends that TitleMax's actions in the 2019 Case (filing a proof of claim, not objecting to the plan, and accepting payments under the plan) constituted forfeiture of its absolute right, title, and interest in the Automobile under the recent cases of *In re Eldridge* and *In re Deakle*. (Doc. 44). TitleMax does not dispute it consented to being treated as a creditor in the 2019 Case, however, it contends that after dismissal of the 2019 Case those actions have no binding effect because dismissal vacated the confirmed plan in that case. (Doc. 42). Further, after dismissal of the 2019 Case, TitleMax contends it was not required to immediately attempt repossession under the terms of the agreement or applicable law. *Id.*

3

## III. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

### A. Waiver

Waiver is the intentional relinquishment of a known right. *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). In *Matter of Garfinkle*, the Eleventh Circuit outlined the requirements of waiver:

> (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit. Waiver may be express, or, as in this case, implied from conduct. A party may waive any right which it is legally entitled to, including rights secured by contract. When waiver is implied from conduct, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case. Furthermore, waiver does not arise from forbearance for a reasonable time.

*Id.* (internal citations omitted).

In the context of a pawn transaction, the Eleventh Circuit recently held in *In re Eldridge*, that forfeiture and absolute transfer of title under the Alabama Pawnshop Act can be waived by an expressed mutual agreement of the parties to a pawn contract. No. 21-11457, 2021 WL 4129368, at *3 (11th Cir. Sept. 10, 2021) (citing *Shutte v. Thompson*, 82 U.S. 151, 159 (1872)). Moreover, Alabama law does not void a pawn transaction because a pawnbroker waives or releases its statutory or contractual rights. *Id*. In *In re Deakle*, the Bankruptcy Court for the Southern District of Alabama held that a pawnbroker's participation in a bankruptcy case, without objection until three months after the plan was confirmed, was sufficient conduct to waive forfeiture and the absolute transfer of title under the Alabama Pawnshop Act. 617 B.R. 709, 716 (Bankr. S.D. Ala. 2020) (noting that the pawnbroker "slept on its rights by taking no action in this bankruptcy until three months after the court confirmed the plan"); *see also In re Cottingham*, 618 B.R. 555, 564 (Bankr. N.D. Ala. 2020) (providing that the pawnbroker

4

"waived [its] argument by its complete failure to act until after all parties in interest . . . were led to believe that [the pawnbroker] had accepted its treatment under the confirmed plan"). Here, while the actions of TitleMax in filing a proof of claim in the 2019 Case, not objecting to the plan proposed and ultimately confirmed in the 2019 Case, and accepting payments under that confirmed plan may have been sufficient acts to waive Debtor's forfeiture and the absolute transfer of title to TitleMax under the Alabama Pawnshop Act, there is a critical difference between the facts of this case and those in *In re Deakle*. While the court in *In re Deakle* held the pawnbroker waived forfeiture and its rights in the pawned automobile because it did not oppose confirmation and accepted payments under a confirmed plan, the court did not extend its holding to confirmed plans that were later dismissed. 617 B.R. at 716. Because Debtor's 2019 Case was dismissed after confirmation, § 349 controls.

## B. The Effects of Dismissal Under 11 U.S.C. § 349

When a bankruptcy case is dismissed, § 349(b)(3) "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3); *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978 (2017) (stating that § 349 "provides for what is, in effect, a restoration of the prepetition financial status quo"). The Court finds the holding of *In re Crump* particularly useful in its analysis of this case. In *In re Crump*, the debtor entered into several pawn transactions with a pawnbroker in which he pledged title to his automobile in exchange for a loan. 467 B.R. 532, 533 (Bankr. M.D. Ga. 2010). The debtor defaulted on the loan, failed to cure prior to the expiration of the redemption period, and subsequently filed bankruptcy listing the pawnbroker as a secured creditor. *Id.* The debtor's initial case was dismissed prior to confirmation, and the pawnbroker repossessed the automobile. *Id.* The debtor filed a second

5

Case 21-10156    Doc 45    Filed 09/30/21    Entered 09/30/21 16:54:08    Desc Main
Document      Page 5 of 8

bankruptcy case and turnover motion arguing that the pawnbroker waived its ownership interest in the automobile by filing a proof of claim and accepting adequate protection payments in the debtor's first case. *Id.* at 534. The court found that once the first case was dismissed, the position asserted by the pawnbroker in that case did not act as a waiver of its ownership interest in the automobile. *Id.* The court reasoned that upon dismissal, § 349 returns the parties to their positions as they existed at the time of the filing. *Id.* at 535. Ultimately, the court held that because the debtor forfeited its ownership interest in the automobile to the pawnbroker prior to the debtor filing its first case, the pawnbroker remained the absolute owner of the automobile once the debtor's first case was dismissed. *Id.*

Although the Court recognizes that the plan in the debtor's first case in *In re Crump* was not confirmed while the plan in Debtor's 2019 Case was confirmed, the Court finds that similar results are warranted here. When drafting § 349, Congress noted that "the basic purpose of [§ 349] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 95-595. Bearing this in mind, numerous courts have contemplated the relationship between the binding effects of § 1327 and the effects of dismissal under § 349. While courts limit the restatement effect of § 349 to its expressly enumerated provisions, courts considering this issue in the context of Chapter 13 cases have held that upon dismissal of a Chapter 13 case without a discharge, the order of confirmation is vacated, the debtor loses any benefits promised in exchange for the successful completion of the plan, and the creditor's

6

Case 21-10156    Doc 45    Filed 09/30/21    Entered 09/30/21 16:54:08    Desc Main
Document    Page 6 of 8

property rights as of the commencement of the Chapter 13 proceeding are returned to it.[1] *In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012) (stating that "dismissal of a bankruptcy case restores the *status quo ante*") (internal citations omitted); *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985) (finding that after dismissal the parties were no longer bound by the previously confirmed plan); *In re Shula*, 280 B.R. 903, 905 (Bankr. S.D. Ala. 2001) (noting that when a debtor's previously confirmed case was dismissed, it was no longer binding). Moreover, while the equitable doctrine of estoppel may limit the impact of § 349, estoppel is not applicable here as both parties have taken inconsistent positions in prior cases.

Here, the dismissal of the 2019 Case prior to a discharge restored to TitleMax and Debtor all the property rights they had in the Automobile as of the commencement of the 2019 Case. Specifically, TitleMax's rights in the Automobile under the pawn contract were restored upon dismissal of the 2019 Case because the underlying pawn transaction was not voided. *See Eldridge*, No. 21-11457, 2021 WL 4129368, at *8 (noting that "nothing in Alabama law . . . voids a pawn transaction because a pawnshop waives or releases its statutory or contractual rights"). Upon dismissal of the 2019 Case, the parties were returned to their prepetition positions with TitleMax having absolute title, right, and interest in the Automobile under § 5-19A-6 of the Alabama Pawnshop Act. While TitleMax waited over a year to repossess the Automobile after dismissal of the 2019 Case, Debtor does not argue that this delay resulted in a waiver of TitleMax's rights in the Automobile. As of the filing of the 2021 Case, TitleMax

---

[1] The Eleventh Circuit considered the effects of dismissal without a discharge of an individual debtor's confirmed Chapter 11 case in *First Nat'l Bank of Oneida, N.A. v. Brandt*, 887 F.3d 1255, 1261-62 (11th Cir. 2018). The court remanded the case, noting in dicta that dismissal of a confirmed Chapter 13 case without a discharge reverts the parties to their pre-petition positions. *Id.* On remand, the bankruptcy court found that upon dismissal the parties were no longer bound by the terms of the previously confirmed plan. *First Nat'l Bank of Oneida, N.A. v. Brandt*, 597 B.R. 663, 670 (M.D. Fla. 2018).

retained absolute ownership of the Automobile, and Debtor did not have any interest in the Automobile that was subject to the automatic stay under § 362.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that TitleMax's objection to confirmation (Doc. 20) of Debtor's case is sustained and the motion (Doc. 21) confirming that the stay is not in place is granted. Debtor has until October 14, 2021 to file an amended plan. The Court will schedule a confirmation hearing separately.

Done this 30th day of September, 2021.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtor
Michael Brock, Attorney for Debtor
Sabrina L. McKinney, Trustee
David Butler, Attorney for TitleMax